John Earl WOODS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–732.

Court of Criminal Appeals of Oklahoma.

May 10, 1977.

Rehearing Denied May 26, 1977.

Gary F. Duckworth, Raymond Burger, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Donnie G. Pope, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, John Earl Woods, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–75–3955 for the offense of Assault and Battery With a Dangerous Weapon. His punishment was fixed at five (5) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Rhonda Hall, testified that on October 13, 1975, she was returning home with her husband on the 39th Street Expressway. A silver Monte Carlo pulled in front of them and came to a sudden stop. Her husband put on the brakes to avoid hitting the vehicle. The vehicle continued down the Expressway stopping in the same fashion twice more before reaching the Portland intersection. Both cars stopped at the red light at Portland. The driver of the Monte Carlo, whom she identified in Court as the defendant, got of his car and started around the back of their car. Her husband started getting out of the car and was grabbed by the defendant and thrown to

the ground. She got out of the car and went around toward the back. She observed the defendant kicking her husband in the face with his cowboy boots. She ran over to where her husband was lying on the ground. The defendant stated "I will do the same fucking thing to you too." (Tr. 13). She yelled for help and three boys came over to assist her. Her husband was bleeding from the ears, nose and mouth. The defendant left and got in his car. He got out of the car again and threatened the boys. He called them "long-haired son-of-a-bitches" and said "that he would do the same thing to them." She went across the street to call the police and when she returned, defendant had left the scene. She gave the tag number to the police. Her husband was taken to Baptist Hospital where he remained for eight days.

Jerry Scott testified that he and two friends were driving on 39th Street on October 13th, 1975. He observed defendant kick Jerry Hall as he was lying on the ground. He testified that the defendant was wearing cowboy boots. He and his friends got out of their car and attempted to help Hall. Hall was coughing up blood and having a hard time breathing. The defendant threatened them and Hall's wife. The defendant left and then returned again cursing and threatening Hall's wife.

Carol Leight Smith testified that she observed defendant's vehicle cut in front of the Hall vehicle and make a sudden stop. She observed defendant get out of his car, pull Jerry Hall from his car and throw him to the ground. She observed defendant hitting and kicking Hall. She testified that the defendant kicked him twice while he was lying motionless on the ground.

Michael Kalmanoff testified that he was in the same car with Carol Smith. He observed defendant pick up Jerry Hall and throw him to the ground. The defendant hit Hall in the face and then kicked him while he was lying down.

Jerry Hall's testimony as to what transpired prior to stopping at the stop sign did not differ substantially from the testimony of his wife. He testified that as he was stepping out of his car he inquired of the defendant "what is the problem," defendant grabbed him and threw him to the ground. He rolled over on his side and was kicked in the face. He then lost consciousness.

Dr. Jerry Renfro testified that he examined Jerry Hall on October 14th. He testified that Hall had a fractured jaw, a fractured mandible and a linear skull fracture.

For the defense, defendant testified that on the evening of October 13, 1975, he, his brother and their wives were returning home on the 39th Street Expressway after eating dinner. He noticed a car coming up behind him at a rather fast rate of speed. He tapped his brakes. The car continued to tailgate him and he tapped his brakes again. The car pulled up beside him at the Portland signal light. Someone in the car said a curse word. He yelled back at the persons in Hall's car. Hall's wife started cursing him. He told Hall "that I would yank his mustache off," and Hall replied "you've got it to do or something to that effect." They both got out of their cars and met at the back of Hall's left rear fender. Hall swang at him and grabbed Hall by the head. They fell to the ground. He hit Hall once as they were going down and again while they were lying on the ground. His brother Jerry patted him on the shoulder and he stood up. Three hippies ran over to him and he told them to stay away from him. He got to his car and went home. He specifically denied wearing cowboy boots or kicking Hall.

Jerry Don Woods testified that he was following his brother, the defendant, on the evening in question. He observed defendant and Hall get out of their respective vehicles at the stop light at Portland and 39th. Hall swang at the defendant and missed. The defendant grabbed him and they fell against a white station wagon and then to the ground. The defendant struck Mr. Hall twice. He did not see the defendant kick Hall. He put his hand on the defendant's shoulder and said "John, I think he's had enough."

Judy Woods, Jerry Don Woods' wife, and Lynette Woods, defendant's wife's testimo-

ny did not differ substantially from the testimony of the defendant.

The defendant asserts as the first assignment of error, that the trial court erred in overruling his motion for mistrial for misconduct of the prosecuting attorney during cross-examination of the defendant. The alleged misconduct appears in the record as follows:

"Q. You had been drinking that night?

"A. No, sir.

"Q. You ever been convicted of a crime of moral turpitude?

"A. If you will explain that, I will answer.

"Q. Felonies are crimes of moral turpitude.

"A. No, sir. This is the first time I've ever been in court in my life, other than for a traffic ticket or something like that.

"Q. Were you ever convicted of a crime in Bartlesville, Oklahoma?

"A. No, sir." (Tr. 162–163).

■ We need only observe that the record does not reflect that the defendant objected to this line of questioning but rather waited until the end of the State's case in chief to voice his objection. In dealing with a similar assignment of error in *Bales v. State*, Okl.Cr., 429 P.2d 1014 (1967) we stated:

"The proper time for interposing objections to an improper question propounded by the County Attorney is when the question is asked. If the Court overrules the objection and allows the witness to answer, exceptions should be taken at that time to the ruling of the court and counsel for the defendant should move for a mistrial. When this is not done, any objection to the improper question and answer is waived and will not be considered by this Court on appeal."

■ The defendant next contends that the trial court erred in overruling his motion for a mistrial on the grounds of misconduct of the prosecuting attorney wherein the prosecuting attorney asked the defendant on cross-examination if he had had trouble fighting and whether the defendant knew of the "Hell's Angels." We have carefully examined each of the alleged instances of misconduct and are of the opinion that the same were not so prejudicial as to influence the verdict against the defendant. In *Samples v. State*, Okl.Cr., 337 P.2d 756 (1959), we stated:

"In view of the evidence, we must apply the principle long adhered to by this court that a conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can say that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might, in some degree, have influenced the verdict against the defendant. . . ."

■ The defendant alleges in the third assignment of error, that the trial court erred in refusing to grant a mistrial on the grounds of misconduct of the District Attorney in putting on a witness to testify to the reputation for truth and veracity of Rhonda Hall in rebuttal. We agree with the defendant that said testimony was improper. In *Gose v. State*, 32 Okl.Cr. 234, 240 P. 1082 (1925), this Court stated:

"In the case of *Kirby v. State*, 25 Okl.Cr. 330, 220 P. 74, 33 A.L.R. 1212, we held that in a criminal trial the mere fact that a witness' testimony is contradicted by adverse testimony does not warrant the introduction of evidence as to his reputation for truth and veracity."

We would observe however, that the witness did not, in fact, testify as to his opinion for her reputation for truth and veracity. The trial court sustained defendant's objection to the testimony and properly admonished the jury to disregard the testimony. In *Green v. State*, 54 Okl.Cr. 450, 23 P.2d 506 (1933), this Court stated:

"An examination of the record discloses that the court sustained objections to the first evidence complained of and admonished the jury not to consider same. In view of the fact that ruling was favorable to the defendant, there was no error presented to this court with respect to that part of the evidence."

The defendant finally asserts that the trial court erred in refusing to grant a mistrial upon misconduct of the District Attorney in introducing evidence which was outside the issues of the case, said evidence designed to arouse sympathy, passion and prejudice in the minds of the jury. The complained of misconduct occurred during the direct examination of Rhonda Hall wherein she testified concerning the extent of her husband's injuries. We need only observe that although it is questionable whether the witness was properly qualified to testify as to the extent of the injuries, it is readily apparent that the defendant could not have been prejudiced by such testimony in view of her husband's testimony and the testimony of Dr. Renfro concerning the injuries.

Defendant having totally failed to meet the burden of establishing prejudice, we therefore find it to be without merit.

In conclusion we observe the record is free of any error which would cause reversal or justify modification. The judgment and sentence is accordingly *AFFIRMED.*

BLISS and BRETT, JJ., concur.